| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 05-266** |
| **MARIA CARMEN PALAZZO, M.D.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Maria Carmen Palazzo, M.D.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. #373) is **DENIED**.

## BACKGROUND

This matter is before the court on Maria Carmen Palazzo's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Palazzo claims that the Government improperly withheld evidence that was material to her guilt in violation of Brady v. Maryland, 83 S.Ct. 1194 (1963).

The United States Court of Appeals for the Fifth Circuit explained the background of this case in its opinion affirming Palazzo's conviction on her direct appeal. United States v. Palazzo, 372 Fed. Appx. 445, 445- 449 (5th Cir. 2010). On January 16, 2009, Palazzo timely appealed her conviction to the United States Court of Appeals for the Fifth Circuit arguing that: (1) the evidence produced at trial was insufficient to support her conviction; (2) the indictment was duplicitous; (3) the district court erred in admitting a demonstrative aid into evidence; and, (4) that the district court erred in calculating the loss and forfeiture amounts. Palazzo, 372 Fed. Appx. 445. The appellate court held that there was sufficient evidence to support Palazzo's conviction, and that the indictment was not duplicitous. Id. at 451-52. The appellate court also affirmed this court's decision to admit the demonstrative aid into evidence, and agreed with this court's calculations of the loss and forfeiture amounts. Id. at 453-56. Palazzo appealed the appellate court's decision, and the Supreme

Court of the United States denied her petition for a writ of certiorari. Palazzo v. United States, 131 S. Ct. 231 (2010).

On August 19, 2010, Palazzo pleaded guilty to an additional 15 counts of health care fraud in violation of 21 U.S.C. §§ 331(e) and 333(a)(2).[1] She was sentenced to 13 months imprisonment, to be served concurrently with each other and the term of imprisonment imposed for her original conviction on 39 counts of health care fraud.

After the Supreme Court of the United States denied Palazzo's petition for a writ of certiorari, Palazzo filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, et seq., for all the Federal Bureau of Investigation's ("FBI") records pertaining to her investigation and prosecution. On July 27, 2011, the FBI responded to Palazzo's FOIA request and turned over several hundred documents, but also withheld an undisclosed amount of information pursuant to FOIA exemptions from disclosure. On August 16, 2011, Palazzo appealed the FBI's decision to withhold documents to the United States Department of Justice's Office of Information Policy ("OIP").

On October 3, 2011, while awaiting the OIP's decision on her appeal, Palazzo filed this §2255 motion to vacate, set aside, or correct sentence with respect to the 39 counts of health care fraud of which the jury found her guilty.[2] Using the documents that she had received pursuant to

---

[1] Counts 41-55 of the Superceding Indictment pertained to Palazzo's failure to maintain records in connection with her investigative study of the prescription medication Paxil. Prior to her trial, this court granted Palazzo's motion to dismiss those counts (Doc. # 96). The Government's appeal of that decision to the United States Court of Appeals for the Fifth Circuit was pending at the time of trial. On February 6, 2009, the United States Court of Appeals for the Fifth Circuit reversed and remanded this court's dismissal of Counts 41-55. United States v. Palazzo, 558 F.3d 400 (5th Cir. 2009).

[2] Palazzo cannot seek post conviction relief from Counts 41-55 of the Superceding Indictment under 28 U.S.C. § 2255, because she waived that right in her plea agreement.

her FOIA request, Palazzo argued that the Government violated <u>Brady v. Maryland</u>, 83 S.Ct. 1194 (1963), by failing to produce during discovery several documents that she claims included exculpatory information. Palazzo lists four categories of such documents: (1) documents containing statements by her former employees that contradict their trial testimony or the government's theory of guilt; (2) documents relating to the government's concurrent investigation of St. Claude Medical Center and its parent company, United Medical Corporation; (3) documents that demonstrate the government's witnesses' personal bias against her; and (4) documents related to the government's civil settlement with Touro regarding health care fraud.

On November 15, 2011, the OIP notified Palazzo's counsel that: (1) it was remanding Palazzo's request "for further processing of the responsive records withheld pursuant to Exemption 4"[3]; (2) the FBI would "send any additional releasable records" that were not properly withheld pursuant to Exemption 4; (3) Palazzo could appeal future "adverse determinations" made by the FBI; and, (4) the FBI properly withheld certain information pursuant to five FOIA exemptions.[4]

---

[3] Pursuant to 5 U.S.C. § 552(b)(4), "Exemption 4," the FOIA does not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

[4] The five exemptions are as follows: (1) pursuant to 5 U.S.C. § 552(b)(3), the FBI properly withheld information that concerned matters specifically exempted from release by statute (Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings); (2) pursuant to 5 U.S.C. § 552(b)(6), the FBI properly withheld personal files, medical files, and similar files that if released would constitute a clearly unwarranted invasion of the personal privacy of third parties; (3) pursuant to 5 U.S.C. § 552(b)(7)©, the FBI properly withheld information that concerns records or information compiled for law enforcement purposes that if released would constitute an unwarranted invasion of the personal privacy of third parties; (4) pursuant to 5 U.S.C. § 552(b)(7)(D), the FBI properly withheld records and information compiled for law enforcement purposes that if released could reasonably be expected to disclose the identities of confidential sources and information furnished by such sources; and, (5) pursuant to 5 U.S.C. § 522(b)(7)(E), the FBI properly withheld records and information compiled for law enforcement purposes that if released would disclose techniques and procedures for law enforcement investigations.

By February 2012, Palazzo had not received any additional documents pursuant to the OIP appeal. On February 9, 2012, she wrote to the OIP inquiring about the status of the FBI's additional production of documents. On April 11, 2012, Palazzo filed a motion to compel compliance or to continue deadlines in this case, requesting the court to order the Government to comply with the OIP's November 15, 2011, decision and produce additional documents. On April 12, 2012, this court granted Palazzo's motion, and ordered the Government to produce all responsive documents, as directed by the OIP, on or before May 1, 2012.

On April 13, 2012, the Government filed a motion for reconsideration of the court's order directing the Government to comply with the OIP's appeal decision. On August 16, 2012, this court granted the motion and amended its April 12, 2012, Order directing the Government to produce responsive documents as required by the OIP, and instead required the Government to produce responsive documents to the court by October 1, 2012, for an in camera inspection. On September 28, 2012, the Government produced the documents to the court.

After the court issued its August 16, 2012, Order, the FBI produced over 2,500 documents to Palazzo in response to her FOIA request. On October 1, 2012, Palazzo filed a motion asking that this court conduct an in camera inspection of the redacted portions of those documents, arguing that the court's review of the unredacted documents "will reveal exculpatory evidence that is relevant to [her] 2255 motion." Specifically, Palazzo requested that this court "review the unredacted [documents] for exculpatory and impeaching evidence."

On November 1, 2012, this court denied Palazzo's motion to compel compliance in connection with the documents the Government produced for in camera inspection, finding that information redacted from documents was properly withheld. The court also denied Palazzo's

motion for in camera review of documents that were produced to her after August 16, 2012, finding that Palazzo did not demonstrate good cause that she is entitled to discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings, because she does not offer any specific allegations regarding the existence of Brady material in the withheld information. This court set January 2, 2013, as the deadline for Palazzo to reply to the Government's opposition to her §2255 motion to allow her to make arguments regarding the documents she received after August 16, 2012.[5]

## ANALYSIS

### A. Legal Standard

Relief under §2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). Accordingly, "[a] defendant . . . may not raise an issue for the first time on collateral review without showing both 'cause' for [her] procedural default, and 'actual prejudice' resulting from the error." United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991). A defendant can establish "cause" by showing that an objective impediment that is external to her defense prevented her from raising a claim on direct appeal. United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). To show "actual prejudice" the defendant must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting [her] entire trial with error of constitution dimension." Shaid, 937 F.2d at

---

[5] In her reply memorandum, Palazzo argues for the first time that she is entitled to relief under §2255 because the government's evidence was not sufficient and the indictment was duplicitous. New claims raised for the first time in a reply memorandum need not be considered by the district court. See United States v. Cervantes, 132 F.3d 11065, 1111 (5 th Cir. 1998) (holding that a district court does not abuse its discretion in refusing to consider new issues raised in a reply memorandum after the Government has filed its response).

233. However, the defendant need not show cause and actual prejudice if the government fails to raise the procedural bar in the district court. United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996).

In this case, Palazzo did not raise the Brady issues she asserts in her §2255 motion on direct appeal. Although the Government cited law regarding the procedural bar, it never specifically raised it regarding Palazzo's claims. Instead, the Government addressed the merits of Palazzo's Brady claims. Therefore, Palazzo is not required to show cause and actual prejudice regarding her procedural default. See id.

Pursuant to §2255, a prisoner in custody under a federal court sentence may seek relief on four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or, (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255. If the district court determines that a petitioner is entitled to relief under §2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence [her] or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Pursuant to §2255, the district court must grant a petitioner a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992).

**B.      Brady Material**

Under Brady v. Maryland, 83 S.Ct. 1194 (1963), a defendant's due process rights may be violated when the government withholds exculpatory or impeachment evidence that is both

favorable to the defendant and material to guilt or punishment. Murphy, 205 F.3d at 814 (citing Hughes v. Johnson, 191 F.3d 607, 629 (5th Cir. 1999)). In Youngblood v. West Virginia, 126 S.Ct. 2188, 2190 (2006), the Supreme Court of the United States explained the law regarding Brady claims:

> A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is known only to the police investigators and not to the prosecutor. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Thus, to prevail on a Brady claim, the defendant must show that (1) the government withheld evidence; (2) the evidence was favorable to the defendant; and, (3) the evidence was material to guilt or punishment. DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002).

However, the prosecution has no obligation under Brady to produce evidence or information that the defendant knows, or that the defendant can obtain through the exercise of reasonable diligence. Brown v. Cain, 104 F.3d 744 (5th Cir. 1997). "Evidence is not 'suppressed' if the defendant either knew, or should have known of the essential facts permitting [her] to take advantage of any exculpatory evidence." West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996). Thus, "[t]he prosecutor is under no duty to make a complete and detailed accounting to defense counsel of all investigatory work done." Blackmon v. Scott, 22 F.3d 560, 565 (5th Cir. 1994).

Palazzo argues that the Government improperly withheld four categories of <u>Brady</u> material: (1) statements made by Government witnesses during the investigation that contradict the Government's theory of guilt; (2) statements made by Government witnesses during the investigation that demonstrate bias toward Palazzo; (3) documents concerning her billing practices at St. Claude Medical Center; and, (4) evidence related to the Government's civil settlement with Touro regarding health care fraud.

### 1. Statements made by Government witnesses during the investigation that contradict the Government's theory of guilt

Palazzo claims that the documents contained statements by her former employees that contradict their trial testimony or the Government's theory of guilt. Palazzo argues that the documents note that, Kelly Brewer,[6] her former office manager, said that the "treatment team" meetings "involved contact with each patient," but at trial Brewer testified that "what was billed [did not have] anything to do with whether or not Dr. Palazzo had seen [the patients] that day." Palazzo also argues that Brewer's statements in the documents contradict the Government's theory regarding the "treatment team scheme" that Palazzo "billed a complex medical evaluation and management code . . . without seeing a single patient."

Brewer's statement during the investigation did not contradict her trial testimony because it is unclear whether she was talking about PHP or inpatient visits during the investigation. At trial, she specifically testified that the billing did not have anything to do with whether Palazzo saw PHP patients on the day in question. Brewer's statement during the investigation does not undermine the confidence in the verdict, and thus, is not <u>Brady</u> material.

---

[6] The names of the declarants were redacted from the documents that the Government produced to Palazzo. Palazzo guesses at who made each statement.

Next, Palazzo argues that the documents note that Natalie Prejean Blanche, her former physician's assistant, said that the patients "'gained something' from the treatment regime for which Palazzo billed government health care programs." Palazzo argues that this statement contradicts the Government's theory that Palazzo did not perform any services for which she billed Medicare. Palazzo also argues that the statement contradicts Blanche's grand jury testimony that "there was no good from [Blanche] seeing [the patients]," and Blanche's trial testimony that she did not "think it benefitted [the patients] being seen every day in the capacity that [she] saw them."

As the Government points out, Blanche stated during the investigation that she believed that the patients "gained something" from the PHP program that was staffed by social workers. This does not contract her testimony that the patients did not necessarily benefit from her services, as opposed to the PHP program as a whole. Blanche's statement during the investigation does not undermine the confidence in the verdict, and thus, is not <u>Brady</u> material.

### 2. Statements made by Government witnesses during the investigation that demonstrate bias toward Palazzo

Palazzo argues that the Government withheld evidence that would have permitted her to impeach the Government's witnesses, who were her former employees, because the documents demonstrated that the witnesses had personal bias against her. Palazzo claims she should have been provided with Rob Leonard's statements that Palazzo "paid her employees low wages but worked them to death," and relating to Palazzo's disputes with the labor board concerning her treatment of her employees. Palazzo also argues that she should have been provided with Blanche's statements that Palazzo "was unethical and did not give a s— about her patients," and that Palazzo was "narcissistic and paranoid." Further, Palazzo argues that she should have been provided with Deborah Lehrmann's statements that Palazzo would use her employees to "make Palazzo happy"

by "getting her ice cream, food, etc.," that Palazzo would "yell at her," making her feel "very nervous," and that during one incident Lehrmann was "trying to remain cordial, and trying not to cry." Palazzo also claims that she should have been provided with a statement made by a former administrative employee of Touro, Nancy Bologna, that she was "arrogant."

Palazzo had may sources from which she knew or should have known about the bias of Leonard, Blanche and Lehrmann.

On direct examination, Leonard testified that when he tried to show Palazzo that the dates and times on her medical director invoices should correlate, Palazzo stated "I know what I'm f—ing doing. And besides, who looks at that stuff anyway." Leonard also testified that Palazzo was very boisterous, and screamed profanities in his face. Leonard described her as direct and controlling. Further, Palazzo should have known about her own problems with the labor board that Leonard mentioned during the investigation.

Blanche's Grand Jury testimony, which Palazzo was provided with, is replete with instance of Blanche testifying as to her problems with Palazzo. For example, Blanche testified before the Grand Jury that "its very hard to talk about anything because [Palazzo] just is very unapproachable and will yell and curse you out." Also, during cross-examination, Palazzo questioned Blanche about an email in which she stated that "[Palazzo] needs to go to hell. I hate her crazy ass."

Lehrmann's trial testimony revealed her bias toward Palazzo. Lehrmann testified that Palazzo fired her on Christmas Eve at a party at Palazzo's house and then refused to give Lehrmann her final paycheck until she signed a statement, written by Palazzo, in which Lehrmann took responsibility for all billing errors. Lehrmann testified that the statement was false, but that she

wanted her check, did not care what Palazzo was typing up, and would have signed a statement saying that she "killed Kennedy" to get her final check.

The Grand Jury and trial testimony of Leonard, Blanche and Lehrmann demonstrate that Palazzo knew or should have known about any potential bias that these witnesses held against Palazzo, and she could have cross-examined them at trial about such bias. The particular statements they made during the investigation are do not demonstrate more bias than the information Palazzo already had. Brady does not require the Government to produce information that the defendant knows or should known through reasonable diligence. These statement made during the investigation by Leonard, Blanche and Lehrmann do not undermine the confidence in the verdict, and thus, are not Brady material.

Further, Palazzo misquotes Bologna's statement regarding her arrogance. Bologna actually stated during the investigation that all doctors are arrogant. Bologna also stated that she believed that Palazzo had been made a scapegoat, and that some of the things Palazzo was blamed for may not be true. Bologna's statements do not show bias against Palazzo, and thus, are not Brady material that undermine the confidence in the verdict.

### 3. Documents concerning her billing practices at St. Claude Medical Center

Palazzo also claims that the Government improperly withheld exculpatory information relating to the Government's concurrent investigation of her billing practices at St. Claude Medical Center. Palazzo claims that the documents she received note that the Government's investigation of her was conducted "jointly" with its investigation of St. Claude in connection with a qui tam suit that alleged that United Medical Corporation, St. Claude's parent company, and its executives engaged in multiple schemes to fraudulently bill government health care programs, and specifically

alleged that Palazzo participated in the scheme. At her trial, the Government maintained that Palazzo's billing practices at St. Claude were relevant because they related to her general scheme of health care fraud. Palazzo argues that the Government failed to produce to her during discovery information regarding why it declined to intervene in the qui tam lawsuit, and that such information related directly to the Government's theory of her guilt. Palazzo argues that the Government must have decided not to prosecute her regarding her billing at St. Claude because there was no fraud found in those records.

On March 6, 2006, the Government informed Palazzo's counsel of the evidence that was available for discovery, which included evidence related to the St. Claude investigation. On July 23, 2007, the Government informed Palazzo's new counsel that, except for reports of investigation, counsel had access to every document obtained in the course of the investigation, including evidence related to the St. Claude investigation. Thus, Palazzo had access to all of the evidence that could have demonstrated why the Government declined to intervene in the qui tam suit, and she has not demonstrated that she is entitled to a specific statement from the Government explaining its reasons for declining to intervene. Therefore, Palazzo has not demonstrated that the Government violated Brady with respect to information relating to the St. Claude qui tam suit.

### 4. Evidence related to the Government's civil settlement with Touro regarding health care fraud

Finally, Palazzo claims that the Government improperly withheld exculpatory evidence related to its civil settlement with Touro regarding health care fraud. Palazzo argues that the Government "characterized Touro as a victim of [her] alleged scheme," when "the Government actually believed that Touro was complicit in the schemes alleged in the indictment and entered into a civil agreement in which Touro repaid the Government $1.75 million." On April 7, 2008, Mark

12

Steinbaur and Nancy Bologna, Touro employees, testified on the Government's behalf at Palazzo's trial. That same day, Touro and the Government entered into the settlement agreement involving alleged fraudulent psychiatric referrals to Touro from Palazzo. Palazzo learned of the settlement agreement during the course of the trial, but after Steinbaur and Bologna testified. Palazzo argues that she should have been provided with the information regarding the settlement agreement before Steinbaur and Bologna testified because she was not able to cross-examine them about the settlement agreement.

Palazzo learned of the Government's settlement with Touro on April 8, 2008. Palazzo's trial concluded on April 16, 2008. After learning of the settlement, Palazzo did not seek a continuance or attempt to re-call any Touro witnesses to the stand to cross-examine them about the settlement. Palazzo had ample opportunity to explore these issues during her trial, which lasted another week after her learning about the settlement. Therefore, Palazzo has not demonstrated that the Government violated Brady with respect to information relating to the Touro settlement.

## C.      Palazzo's Request for Discovery

Palazzo seeks reconsideration of this court's ruling that she is not entitled to further discovery. Palazzo argues that she believes that the Government's redactions were arbitrary and not in accordance with FOIA.

This court has previously reviewed unredacted copies of some documents that the government produced to Palazzo in a redacted form. After reviewing the documents and the declaration of declaration of David M. Hardy, the FBI Section Chief of the Record/Information Dissemination Section, Records Management Division, the court found that the redacted information was properly withheld pursuant to FOIA exemptions cited by the FBI.

Thereafter, this court considered Palazzo's motion for in camera review of underacted documents that the Government produced to her in redacted form after August 16, 2012. Palazzo argued that the court's review of the unredacted documents "will reveal exculpatory evidence that is relevant to [her] 2255 motion," and requests that this court "review the unredacted [documents] for exculpatory and impeaching evidence." Palazzo speculated that <u>Brady</u> material may exist in the redacted portions of the documents she received from the FBI, and asked this court to fish for it. The court concluded that Palazzo's speculations could not support discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings, because she did not demonstrate good cause that she is entitled to discovery due to her failure to offer any specific allegations regarding the existence of <u>Brady</u> material in the withheld information.

Palazzo again speculates as to the existence of <u>Brady</u> material in the documents. Palazzo opines that some of the Government's redactions were arbitrary. However, this court has previously reviewed the government's redactions on other documents and found that they complied with FOIA. Palazzo presents no reason to believe that the redactions that she now asks the court to review do not comply with FOIA. Therefore, Palazzo's renewed motion for in camera inspection and discovery is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Maria Carmen Palazzo, M.D.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. #373) is **DENIED**.

New Orleans, Louisiana, this __15th__ day of January, 2013.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE